Good morning. My name is Peter Sessions. I represent the Plaintiff and Appellant in this matter at Theodor Atanuspour. I'd like to reserve two minutes for rebuttal, if I could. That's fine. So this appeal raises an issue that comes up often in disability cases, whether that's under the Social Security Act or in cases like this under ERISA, because both of the cases involve waiting periods, or sometimes called elimination periods in this case, which is a period of time in which you have to prove that you are disabled before you're entitled to benefits. And the issue presented here is whether evidence from after that elimination period, whether that's relevant, whether that can be used by the claimant to argue that they were entitled to benefits during the elimination period. Counsel, I must say that I didn't read the decision as having a bright line in that regard, and it seems to me that ultimately the question for us is whether there is a clear error in the finding of no disability throughout the elimination period. Isn't that ultimately the question that we have to answer? Well, ordinarily I would be the first to concede that in cases like this the court is typically reviewing for a clear error. And the reason for that is because the district court is typically making findings of fact as to disability. And that happened here. There's a finding of no disability during the elimination period. Yes, but the way the district court arrived at that conclusion was different. And what I mean by that is it categorically rejected all of our post-elimination period efforts. It seems to me that none of that contradicted the evidence in the record that there was no disability throughout the period. For example, Dr. Nemat, the treating physician, writes that the temporary total disability began October 23, 2019, which doesn't meet the requirement. Yes, and I'm happy to address that because I think if the court looks at the entire record it will conclude that this handwritten date on this note is a mistake. It's just not accurate. The record shows that she had been treating Mr. Atanispoor since July of 2019, so before he left work. This is contrary to the district court's assertion. But treatment is not the equivalent of temporary total disability. There was a treatment period during July that was fairly brief, as I understood the record. It went like 10 days or 14 days or something in July, and then there's another gap. And then there's the August assessment. Right, and I think if the court looks at these records throughout this time period, it will see that Mr. Atanispoor's condition is remarkably consistent. So throughout all of this treatment he suffered from the same problems and limitations. Wait a minute, the first part of the... I didn't read the record that way, counsel. In fact, one of the questions I have is whether you're relying on the earlier period where there's a mental health issue and then there's the back issue. So could I start by asking when do you think the period of disability began? When do we start the 90-day clock? It starts when he leaves work. Okay, fine. And at that time when he left work, do you think he was disabled because of what condition? Because of his lumbar condition. Lumbar condition. Well, he also has, as Reliance found, he also has a mental health condition at the same time. But you're not relying on it? You're relying on the back? We believe that he was disabled throughout and on the basis of his lumbar condition. Yeah, I read your briefing, certainly, that you do not challenge the holding that there is not a showing of a mental disorder resulting in a total disability beyond October 4, 2019, which was the, so, am I right? You're not challenging that part? So it's the back or nothing at this point? That's correct. Okay. So, I think if the court looks at these records, it will see that he's suffering from the same problems throughout, pain, spasms, restricted range of motion, weakness. He's tolerating the therapy fair to poor. There's no significant change that happens on October 23, 2019, which is the state that the district court kind of latched onto. And finally, and most importantly, to the extent that there was any sort of question as to when his disability began, according to Dr. Nemat, she clarified that in her statement that she filled out for Reliance. There's a form that the claimant fills out and then the doctor fills out a form. And in the form the doctor filled out, Dr. Nemat said she clarified that his symptoms dated back to the date of disability, in other words, when he left work. Well, so that's the problem. Symptoms dating back is different than somebody saying he couldn't work during this period of time. And that's what I'm looking for, a 90-day period where there's evidence that he had a disabling condition. Well, the Reliance form doesn't ask when the disability began is the problem. Well, except your client has the burden, and Judge Graber has indicated, you know, and I think you've agreed with her, what the standard is that we're looking at. So I'm trying to figure out why you think the district court clearly erred. Well, our difficulty is with... Well, let me back up a second. Even if this court concludes that the district court was right about Dr. Nemat, and the district court certainly tackled Dr. Nemat. So there are findings of fact there. Our argument is even if you find that that's not enough, that that's not conclusive enough, there's this wealth of evidence after the elimination period. But I didn't see anything in that that stated a beginning date that would have contradicted the date of October 23, 2019. And maybe I'm missing something in one of these exhibits, but is there anything in this after evidence? I mean, in theory, certainly, you know, you can examine someone in January and explain how they were doing in October. Of course, that's true. But I just didn't see anything that contradicted that date or gave a firm start date that was supported. Can you point me to any such thing? Well, it's certainly true that there's no statement, explicit statement by a doctor that says, I find that the disability began on X date versus Y date. But, you know, that's also... So how does that help you? When you have only one start date in the record, and you have, for example, one doctor saying that there was a... who examined him in 2020 saying there was a disability at least through 2021, it doesn't... it isn't, by its own terms, retrospective to say, and he's had this for four years up till now. There's nothing like that in these opinions. That's my concern. Well, I would dispute that there isn't retrospective evidence in there, because... Where's there a start date other than this October 23rd? Well, there isn't an explicit date that a doctor... another explicit date that a doctor gave. And part of that is because that's not the way these claim forms are set up. The claim forms that Reliance sends out and that other insurance companies send out say, you know, what condition does your patient have? What are they suffering from? What are their symptoms? How long have they had them? And then it's up to the insurance company and then ultimately a judge to figure out whether that was disabling and when it was disabling. Well, but there's room for comments. There's room for descriptions. There's room for a doctor who has a medical opinion about that to write it in. The form doesn't preclude it. Right. And Dr. Nemat in her form said, Mr. Tanzberg cannot work. He has these symptoms. He's had them since October 4th, which is when he left work. I think that's sufficient. And then I think it's also clarified by all the post-elimination period evidence as well. And the best evidence for this is he gets an MRI. The elimination period ends in November of 2019. He gets an MRI in December of 2019, which shows that he's got significant problems. District Court hasn't challenged this MRI and hasn't challenged his orthopedic interpretation of that MRI. And the orthopedic interpretation of the MRI is that this is significant. I think he's got significant problems. He might need surgery. And I consider him disabled. Are you talking about AR507? I'm talking about Dr. Hedefar. ProHealth Advanced Imaging. I'm sorry. Are you referring to the doctor's report or the MRI report? The MRI report. Should I be looking at the one dated December 28th? Or do I have the wrong one? Let me just make sure I have the right one. December 28th, 2019. Yep. Okay. That's the right one. I have that at 555. I think it's in a couple places in the record. Probably. I have it at 555. Okay. I've got it. So this MRI shows that he's got five to six millimeter bulges. He's got disc desiccation. He's got loss of disc height. His orthopedist takes a look at this MRI and he concludes that these bulges are, quote, sizable. And his conclusion was that Mr. Atena's first condition was, quote, significant and may ultimately require surgical intervention. So the question is, if this was his condition in December of 2019, is that persuasive evidence of what his condition was like the month prior during the elimination period? I think it is. And I think at a minimum the district court was obligated to at least discuss, address the evidence. And that's really the primary problem we have with the district court's conclusions is, you know, this case would be very different if the district court had said, look, I've examined this post-elimination period evidence. I don't find it persuasive because it's contradicted by this other evidence or there wasn't sufficient impairment or any other number of reasons. But the district court didn't do any of that. It didn't engage in any analysis. It didn't say whether this post-elimination period evidence tended to show or not show that Mr. Atenaspor was disabled during the elimination period. Are you asking us to enter an order requiring, if you could write the order, remanding and requiring that this other evidence be considered that you think was not considered? Is that what you're advocating for? Yes. I think it's clear that the district court made a legal error, and this court has said that that is a legal error in the Social Security context, in not even examining this evidence. So I think, as I said earlier, you know, typically we're looking at a clear error standard review because there are findings of fact. This case is kind of the opposite of that because there's an absence of findings of fact. The district court said, I'm not even going to look at this evidence because it came from after. And in the Social Security context, this court, in the Smith v. Bowen case, said it is obvious, so not even a close call, this is a quote, it is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis. And, you know, this court in ERISA case, which cited Smith v. Bowen, the idea is like, look, this evidence is relevant, it needs to be considered. You know, it may not win the day, it may not be persuasive, but at a minimum you have to take a look at it and weigh it and decide, you know, what persuasive value it has. And we feel the district court didn't do that in this case. If there are any questions, I'll save my rebuttal time. That's fine. We'll hear from opposing counsel. Thank you. Good morning, Your Honors. May it please the Court, Michael Brisbane of Wilson Eltzer, Moskowitz, Edelman & Decker, on behalf of the Appellee Reliance Standard Life Insurance Company. The elimination period under the policy requires 90 consecutive days of disability before benefits are payable. The appellant failed to prove that he was disabled from August 8th, 2019 up to and including November 6th of 2019. Therefore, the district court correctly and properly concluded that the appellant, based on the administrative record, did not satisfy the 90-day elimination period and was not entitled to benefits under the policy. There was a question raised during the appellant's oral argument that they relied upon the lumbar for the initial disability. The administrative record is very clear that the initial disability was a mental nervous disability from Dr. Devashian. Right. And there's this concession where he says we're not relying on that in the briefing. It's very clear. I did have a question about whether he's trying to piece them together, whether that would be allowed under the policy for 90 days as long as all of the ailments prevented him from being gainfully employed. But he doesn't seem to be embracing that today. He's saying the lumbar condition was from start to finish. That's what I heard. That's what I understand. That's what I heard. Yep. But that's not what the administrative record shows. The administrative record shows that on August 8th of 2019, Dr. Devashian disabled him for mental nervous. And in fact, he then had mental nervous anxiety depression treatment until October 10th of 2019. And so there was no treatment for the lumbar spine in August or September of 2019. And then you stress that there's a gap, not a long gap, but there's a gap in October and then there's this lumbar condition. So be that as it may, I think Judge Graper's point is well taken. It is certainly possible. In fact, I guess it is necessarily retrospective that a physician or care provider would say this is what the condition was during an elimination period. Do you read the district court record as not looking at any of the documents that post dated the elimination period? We don't agree, Your Honor. And the reason that we don't agree is because on 1ER008, which is part of the findings of fact that the district court made. Let me just turn to it. I'm right almost there. Okay, I'm there. Findings number 26 and 27, the court specifically addresses the appeal letter as well as all of the 10 items that the court reviewed. Number nine is the MRI image that we just talked about, right? Well, actually, that is the MRI image number nine. That's December 2020. Yes. And then L10 is the MRI image of December 28, 2018. Yes, but you'll notice that the date is actually not correct. Should it be 2019? Yes. Yes, okay. It should be 2019 instead of 2018. Okay, so be that as it may, your point is the court considered that evidence. Yes, the court considered it. It put it in its findings of fact. And what it said with respect to this evidence is that it was not, it post dated the elimination period. It was really not retrospective. Right, so that's a different point. This paragraph on page 008, 1ER008, paragraph 27, is the district court saying the majority of the documentation that Mr. Atanas for? Yes. Submitted is. And the court, I think, I read this as the court observing, here are the 10 things that the plaintiff basically submitted. He doesn't say here that he didn't consider them. That's right. Right, so that was my question. And you're now calling my attention to, it's later in the order where there's a suggestion that it wasn't considered. Well, I think what they're referring to is the analysis section, which is on 1ER010. 10, yes, I have that right here. And what they're referring to is the court notes that plaintiff's own reports of pain and medical records from other treating physicians are inadequate to bridge the gap because the majority of his documentation post date the elimination period and are generally not retrospective. Right, and there's another notation on line 17 through 19. So what is your response to that? So our response is, the evidence that was submitted is not retrospective. Because if you look at the administrative record, the declaration from Mr. Atanas for, the declaration from his wife, as well as the records from all of the doctors, and I can cite to you to the ER section of the record. But none of them refer back to 2019. None of them refer back to the elimination period and state that Mr. Atanas for was in fact disabled during that time. So it sounds like you're reading this analysis not to say that these are irrelevant or won't be considered, but just that in substance they don't help him because of the specifics of the documents themselves. Exactly. Opposing counsel's contention is that the MRI, the first MRI from December of 2019, right, you heard him just a moment ago and I'm just interested in your response. If he has this MRI study from the end of December of 2019, is that fair? Is it relevant as an assessment of what the condition of his lumbar spine was a month earlier? Sure, it's relevant, but it's not dispositive, right? Because just because you have an MRI that shows that there are issues wrong with your back doesn't mean that that automatically is disabling. And you have to have some correlation between what's shown on the MRI and what the symptoms are and what the doctor finds. In this particular case, Dr. Nemat could have prescribed any date of disability that she wanted to, right? Because she started seeing him back in July. So she saw him for a month in July. There were 12 treatment dates. She doesn't see him in August or September, and then she starts seeing him again on October 2nd. She could have said he was disabled as of October 2nd, the first day that she saw him. She didn't do that. She waited nine treatment dates before she decided that on October 23rd he was disabled. That is not something that Reliance Standard dictated to her. That is what she found in her own analysis of the appellant. Actually, there is some evidence that is retrospective, but none of it seems to assist the plaintiff here. There's one person who says that he couldn't work effective 11-4-20. There's someone else who said he didn't get worse in his back until October, but doesn't specify which date in October. So I don't see anything that helps him in any of these. We would agree, Your Honor. We agree that there's nothing in the retrospective records that helps him. I'll also point out to the Court that Reliance Standard issued its denial letter on February 24th. The appellant saw Dr. Nemat in March of 2020 and May of 2020. The appellant could have said to Dr. Nemat, you know, I applied. My disability was denied because they said I wasn't disabled, and this is the period of time that they're telling me that I wasn't disabled. Was your date of October 23rd correct? There's nothing to indicate that Dr. Nemat wanted to or did or even considered changing the total disability date of October 23rd, 2019. So again, there is no retrospective medical evidence that shows that Mr. Antanaspore was disabled from October 4th to October 22nd of 2019. If there are any other questions? I don't think there are. Thank you, Counsel. Thank you, Your Honor. I appreciate your time this morning. Thank you. I'll be very brief. I think it's important to push back on this idea that none of this explains why, but I want to reemphasize it. And the primary evidence really is this December MRI. And not just the December 2019 MRI, but the 2020 MRI, which were, according to his neurologist, essentially identical. So what they show is that over this period of time, from December 2019 through December of 2020, his condition was medically stable. And we have an interpretation of the MRI from his orthopedist, Dr. Vahedofar, who says these are serious findings. I think he might need surgery. So the question is, is this evidence that he had a serious back condition in December of 2019 all the way through December 2020? But serious doesn't mean can't work. Well, according to Dr. Vahedofar, it does. Dr. Vahedofar looked at the MRI and said, these findings are serious, and I think you can't work. Now, obviously, he didn't start treating Dr. Vahedofar until 2020. What's the ER site for that? For Dr. Vahedofar's comments? Right. I've got a notation here about him noting, or Dr. Vahedofar, I don't know if that's a man or woman, noting that the condition was serious and stable, but I'm looking for the opinion that they would have prevented him from getting full employment. So I believe it's at 463. Let me just turn to that, please. That's where it starts. I think it's 464 of where his conclusions are. So he says under the section saying treatment, he says the study demonstrated evidence of sizable... I don't see that on 464. I'm on 464. Oh, under treatment? It's kind of fuzzy, but... Yeah, it's difficult to read. Is that the treatment paragraph you want us to read? Yes, it's under treatment. Okay. And he says that... It's significant and may ultimately require surgical intervention. I'm just looking for the part that says... The patient is in severe pain and is functionally limited in vocational activities and activities of daily living. Is that what you're pointing to? Yes. About midway through the paragraph. But that's in the present tense. And the date of this is August of 2020. Yes, but the conclusions are based on this MRI, which took place in December of 2019. So if the medical imaging, which is the best objective evidence of what a person's condition is, if the medical imaging shows that someone's condition has been stable and consistent and the same throughout, Dr. Vadivar's comments in June of 2020, we would argue are applicable to what his condition was back when he had the MRI. There's no indication that his condition had changed in any significant way, so it's reasonable to conclude that if this was his condition in June of 2020, that it was the same as in December of 2019. I'm just going to go back to the Orders of Appeal. Did the trial court have this record? Yes. Is it itemized in the list? I can't really tell that. We have the MRI report. Oh, no, it says AR-355. It's item number five, I believe, from Dr. Vadivar on page one, ER-8. Well, I'm on eight, and at the end of this paragraph, there's an AR-354, 355 parenthetical that the court's referring to, and I'm trying to figure out what is the backup for five. I think that's one of the MRIs. It is. We just reviewed that. Right, but he doesn't list an AR for all these other... That's my point. Yeah. That's my point. So I'm trying to figure out. It says medical records dated, so maybe that's the date. I'll just verify that. At any rate, we can sure do that off record. Your point is that that's the strongest you've got, that the serious medical condition, that there's the two MRIs. We've got the two MRIs. I think that, I know, I found indication in the record of an opinion that the condition was stable. He certainly says serious and painful, and you've just taken us to your best evidence that it was vocationally limiting. Yes? Yes. Okay. And Dr. Vadivar later explicitly says that he should not be working. He later explicitly says what? That Mr. Tanzberg should not be working. Where is that? Is there some other place? Because now is the time, sir. If you've got something else, now is the time. Well, in our appeal, we included a letter from, actually in our response, there was an appeal, and then they had a review by Dr. Grattan, and then with our response to that, we provided a letter from Dr. Vadivar, a long letter talking about his condition. Okay, that I've seen, so now I know what you're talking about. Okay. And if I could just say briefly one last thing. I think there's a difference between, you know, listing evidence in the district court's order and actually, like, tackling it and examining it. Yes, it's clear that the courts saw this evidence, but I think the court needed to have a justification for completely dismissing the evidence other than simply saying this came from a later period in time. Thank you. You're significantly over your time. We've taken you over, but I appreciate your patience with our questions. We appreciate both of your arguments, and we'll take this one under advisement and stand in recess. Thank you. All rise. Hear ye, hear ye. All persons having had business before this honorable court, the United States Court of Appeals. All right, let's support. Questions? Then it's adjourned.
judges: GRABER, CHRISTEN, OWENS